## S99A1490. KING v. THE STATE.
### (535 SE2d 492)

CARLEY, Justice.

Rebecca King was involved in a single-car collision. Emergency personnel found her in a semiconscious condition and transported her to the hospital before any investigating officer arrived on the scene. Because of the seriousness of her injuries, Ms. King was treated in accordance with the hospital's trauma protocol, which included subjecting her to blood-alcohol testing. This was for the purpose of medical diagnosis and treatment only. Ms. King neither consented to the test nor was she under arrest at the time it was administered. The test results indicated a blood-alcohol concentration of .15. Approximately one hour later, the investigating officer arrived at the hospital and, pursuant to OCGA § 40-6-392, requested a State-administered test to determine Ms. King's blood-alcohol content. Based upon the results of this test, she was charged with several counts of driving under the influence, including a less safe driver violation. OCGA § 40-6-391 (a) (1).

The trial court granted Ms. King's pre-trial motion to suppress the results of the State-administered blood test, because of the failure to prove the identity and qualifications of the individual who had drawn the blood. See *Peek v. State*, 272 Ga. 169 (527 SE2d 552) (2000). The prosecution then obtained the issuance of a subpoena to the hospital, seeking the production of Ms. King's medical records for the purpose of gathering evidence to use against her in the criminal proceeding. The hospital turned the records over to the State, without the knowledge or consent of Ms. King or her counsel. Upon learning of this development, Ms. King filed a motion to quash the subpoena and a motion in limine to prevent the use of her own personal medical records at the trial. In her motions, she raised constitutional challenges to the State's use of a subpoena to obtain her records, including an assertion of a violation of her right to privacy under Article I, Section I, Paragraph I of the Georgia Constitution of 1983. The trial court denied the motions, and the blood-alcohol results and the testimony of the supervisor of the hospital's hematology laboratory were admitted at trial over Ms. King's objections. The jury found her guilty of driving under the influence of alcohol to the extent that it was less safe for her to drive. Ms. King appeals from the judgment of conviction and sentence entered on that guilty verdict.

1. In *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, 197 (50 SE 68) (1905), "this Court expressly recognized that Georgia citizens have a 'liberty of privacy' guaranteed by the Georgia constitutional provision which declares that no person shall be deprived of liberty except by due process of law. [Cit.]" *Powell v. State*, 270 Ga. 327, 329 (3) (510 SE2d 18) (1998). This right of privacy guaranteed by the Georgia Constitution is far more extensive than that protected by the Constitution of the United States. *Powell v. State*, supra at 330 (3). In this state, privacy is considered a fundamental constitutional right and is "recognized as having a value so essential to individual liberty in our society that [its] infringement merits careful scrutiny by the courts." *Ambles v. State*, 259 Ga. 406, 408 (2) (b) (383 SE2d 555) (1989). It is against this background that we must consider Ms. King's objection to the State's use of the subpoena to gain possession of her medical records.

While it is true that Georgia does not recognize a common-law or statutory physician-patient privilege, we deal here with the constitutional right of privacy. The initial inquiry is, therefore, whether Ms. King's medical records are within the ambit of protection provided by that more fundamental right. There is no specific authority on this issue. As a general proposition, however, the right of privacy

has its foundation in the instincts of nature. It is recognized intuitively, consciousness being the witness that can be

called to establish its existence. Any person whose intellect is in a normal condition recognizes at once that as to each individual member of society there are matters private and there are matters public so far as the individual is concerned. Each individual as instinctively resents any encroachment by the public upon his rights which are of a private nature as he does the withdrawal of those of his rights which are of a public nature. A right of privacy in matters purely private is therefore derived from natural law.

*Pavesich v. New England Life Ins. Co.*, supra at 194. Applying this definition, a patient's medical information, as reflected in the records maintained by his or her medical providers, is certainly a matter which a reasonable person would consider to be private. "We believe that medical records are entitled to more privacy than bank records and phone records." *Thurman v. State*, 861 SW2d 96, 98 (Tex. App. 1993). Compare *United States v. Miller*, 425 U. S. 435 (96 SC 1619, 48 LE2d 71) (1976) (bank records). Even if the medical provider is the technical "owner" of the actual records, the patient nevertheless has a reasonable expectation of privacy in the information contained therein, since that data reflects the physical state of his or her body. Unless "demanded by the law of the land[,] . . . the body of a person can not be put on exhibition at any time or at any place without his consent." *Pavesich v. New England Life Ins. Co.*, supra at 196. Medical records are within the right of privacy afforded by the Federal Constitution. *United States v. Westinghouse Elec. Corp.*, 638 F2d 570, 577 (IV) (3d Cir. 1980). Because Georgia recognizes an even broader concept of privacy, the personal medical records of this state's citizens clearly are protected by that right as guaranteed by our constitution.

Since Ms. King's medical records are protected by the constitutional right of privacy, they cannot be disclosed without her consent unless their production is required by the law of Georgia. In that regard, the prosecution can justify its invasion of Ms. King's privacy only by showing that it acted pursuant to a statute which effectuates a compelling state interest and which is narrowly tailored to promote only that interest. *Powell v. State*, supra at 333 (3). The State cites OCGA § 24-9-40 (a) as the sole authority for subpoenaing Ms. King's medical records. That statute provides, in relevant part, that

[n]o physician . . . and no hospital or health care facility . . . shall be required to release any medical information concerning a patient except . . . on appropriate court order or subpoena . . . provided, further, that the privilege shall be waived to the extent that the patient places his care and

treatment or the nature and extent of his injuries at issue in any civil or criminal proceeding.

There is some doubt whether this enactment can even be construed as affirmative authority for a litigant to subpoena the medical reports of an opposing party who has not waived the privilege otherwise attaching to those records. Arguably, the statute provides only a protective shield to those health care providers who release a patient's medical records pursuant to an "appropriate court order or subpoena. . . ." The question of what constitutes an "appropriate" subpoena is nowhere addressed in the statute, and it does not confer express authority on the State or another party to file a subpoena seeking a patient's medical records.

Despite this lack of specificity, the State urges that OCGA § 24-9-40 (a) should be construed as implicit statutory authorization for issuance of a subpoena as an investigative tool in criminal cases. Clearly, law enforcement and public safety are compelling and legitimate state purposes. See *Barnett v. State*, 270 Ga. 472 (510 SE2d 527) (1999). However, the State is not entitled to exercise indiscriminate subpoena power as an investigative substitute for procedural devices otherwise available to it in the criminal context, such as a search warrant. *Johnson v. State*, 156 Ga. App. 496 (274 SE2d 837) (1980) (State cannot use a notice to produce as a procedural substitute for a search warrant). The constitutional right of persons to be secure in their persons, houses, papers and effects against unreasonable searches and seizures is itself based upon the concept of the right of privacy. *Powell v. State*, supra at 330 (3), fn. 2.

> [T]he law on the subject of unreasonable searches can not be based upon any other principle than the right of a person to be secure from invasion by the public into matters of a private nature which can only be properly termed his right of privacy.

*Pavesich v. New England Life Ins. Co.*, supra at 199. Just as the authority to conduct a search and seizure is circumscribed by the right of privacy, so too must the prosecution's authority to obtain evidence against a criminal defendant by means of a subpoena be limited. Before the State is authorized to exercise its police power, it must appear " 'that the means are reasonably necessary for the accomplishment of the purpose, *and* not unduly oppressive upon the individuals.' [Cit.]" (Emphasis supplied.) *Powell v. State*, supra at 334 (3). Thus, any use by the State of a subpoena in ostensible effectuation of the compelling interest of enforcement of the criminal laws must be narrowly tailored to insure that the equally compelling con-

stitutional right of privacy is not unreasonably impacted.

Unlike the Fourth Amendment which requires that the State have probable cause prior to the seizure of an accused or his property, OCGA § 24-9-40 (a) does not contain any express limits on the use of a subpoena to obtain a defendant's medical records for possible introduction as evidence in a criminal proceeding. Thus, the State's interpretation of this statute would authorize the disclosure of confidential information by means of a subpoena issued upon the mere filing of an indictment or accusation, if not before. In this particular case, it also would permit the prosecution to circumvent the procedural safeguards of the implied consent statute and to obtain indirectly what it did not properly obtain directly. Although such unlimited use of the subpoena power in a criminal case might well serve the State interest of law enforcement, it cannot be said to do so in a "reasonable" manner if it violates the accused's constitutional right of privacy. Not only must the State's interference with that right be reasonably necessary for law enforcement purposes, such an interference must also avoid subjecting Georgia citizens to undue oppressiveness. *Powell v. State*, supra at 334 (3). Permitting the State unlimited access to medical records for the purposes of prosecuting the patient would have the highly oppressive effect of chilling the decision of any and all Georgians to seek medical treatment.

Moreover, the terms of OCGA § 24-9-40 (a) do not provide Ms. King with an opportunity to contest the validity of the subpoena before the disclosure of her medical records to the prosecution. "Due process of law is denied when an arm of the state acts directly against an individual's property and deprives him of it without notice or an opportunity to be heard." *Reinertsen v. Porter*, 242 Ga. 624, 627 (1) (250 SE2d 475) (1978). "Procedural due process means notice and an opportunity . . . to be heard." *Jackson v. Spalding County*, 265 Ga. 792, 794 (4) (462 SE2d 361) (1995). In her motions to quash and in limine, Ms. King was allowed to object to the admission of her medical records into evidence at trial. However, the constitutional right of privacy protects the initial unauthorized *disclosure* of Ms. King's medical records to anyone, including the prosecutor, and any subsequent opportunity to contest the *admissibility* of the private information does not constitute a sufficient procedural safeguard against any initial unauthorized dissemination thereof. Postdeprivation remedies are never favored and are constitutionally inadequate unless predeprivation remedies are unavailable or impractical. *Novak v. Cobb County-Kennestone Hosp. Auth.*, 849 FSupp. 1559, 1568 (III) (C) (N.D. Ga. 1994), aff'd 74 F3d 1173 (11th Cir. 1996). Clearly, an opportunity to object to the admissibility of medical records already in the possession of the prosecution does not protect against unauthorized disclosure, and the State makes no contention

that a predisclosure opportunity to contest the validity of a subpoena of an accused's medical records is impractical. Thus, as envisioned by the State, its so-called "subpoena exception" violates the due process rights of an accused. "Due process of the law must obtain as a matter of right and not merely by happenstance, or by the grace of judicial or other authorities." *Holland Furnace Co. v. Willis*, 222 Ga. 156, 161 (2) (149 SE2d 93) (1966), overruled on other grounds, *Collins v. Williams*, 237 Ga. 576, 577 (229 SE2d 388) (1976). It is immaterial that Ms. King did not denominate her attack below as a due process challenge which was separate and distinct from her objection on privacy grounds. Because the right of privacy is itself premised upon the due process clause of our constitution, that concept is necessarily subsumed into a constitutional challenge on privacy grounds. See *Powell v. State*, supra at 329 (3); *Pavesich v. New England Life Ins. Co.*, supra at 197. Thus, the privacy issue having been raised in the trial court, the principles of due process are applicable on appeal.

"Whenever possible, a statute must be construed so as to affirm its constitutionality, *and* to uphold the due process rights of affected parties." (Emphasis supplied.) *Hayek v. State*, 269 Ga. 728, 731 (4) (506 SE2d 372) (1998). It is impossible, however, to construe OCGA § 24-9-40 (a), as it is presently worded, as a constitutionally viable authorization for the State in this case to subpoena Ms. King's medical records and also as providing the due process rights to which she is entitled. That statute does not contain any express provisions to insure that the constitutional right of privacy in medical records is not unreasonably impacted by the State's use of a subpoena in criminal cases. Compare OCGA § 9-11-34 (c) (2) (notice and opportunity to object in civil cases). Thus, the issuance of a subpoena for Ms. King's medical records could not be "appropriate" as otherwise required by OCGA § 24-9-40 (a), because such a subpoena would result in a violation of her constitutional right to privacy arising from the due process clause of this state's constitution. Accordingly, we reject that interpretation of the statute.

We do not hold that a Georgia citizen's constitutional right of privacy in medical records is absolute or that OCGA § 24-9-40 (a) is unconstitutional on its face. As that enactment provides, the right to privacy can be waived in writing or "to the extent that the patient places his care and treatment or the nature and extent of his injuries at issue in any civil or criminal proceeding." Our holding is simply that, in the absence of waiver and without notice to the accused or an opportunity to object, it is not "appropriate" under that statute for the State in a criminal case to subpoena a defendant's own personal medical records which are then in the possession of a physician, hospital or health care facility. Compare, e.g., OCGA § 19-7-5, dealing with reporting requirements when a child is the suspected victim of

abuse. We do not address the constitutionality of OCGA § 24-9-40 (a) in other circumstances or in accordance with other possible constructions which are not before us. Thus, we do not determine whether the State can obtain and use a criminal defendant's medical records which are not in the possession of a physician, hospital or health care facility and which, thus, may in extraordinary circumstances be reachable other than by subpoena. Moreover, our decision should not be construed as applicable to the prosecution's use of any procedural device other than an ex parte subpoena to obtain an accused's medical records. Our narrow holding is that OCGA § 24-9-40 (a) cannot be constitutionally applied in this criminal case, because Ms. King did not have notice and an opportunity to object to the State's subpoena of her medical records in which she had not waived her right of privacy. Because to hold otherwise would result in a violation of the accused's due process rights, we must reverse the trial court's denial of Ms. King's motion to quash the State's subpoena.

2. With the exclusion of Ms. King's medical records from evidence, we cannot say that the remaining evidence was sufficient to enable a rational trier of fact to find her guilty of violating OCGA § 40-6-391 (a) (1). *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment reversed. All the Justices concur.*

DECIDED OCTOBER 2, 2000.

*William D. Healan III*, for appellant.

*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.

*Richard A. Malone, District Attorney, Kermit N. McManus, District Attorney, Leslie C. Abernathy, Solicitor, Charles C. Olson, Alvin G. Hollingshed, Paul M. Kurtz, Robert A. Schapiro, Alston & Bird, Jack S. Schroder, Donna P. Bergeson, Angela T. Burnette, Sean A. Black, Healy & Svoren, Nina M. Svoren, Davis, Zipperman, Kirschenbaum & Lotito, Nicholas A. Lotito, Bondurant, Mixson & Elmore, Michael B. Terry, David A. Cook, Carol M. Todd, Powell, Goldstein, Frazer & Murphy, Randall L. Hughes, King & Spalding, Richard L. Shackelford, Karen L. Duke, Kenneth B. Banks, Hunter, Maclean, Exley & Dunn, T. Mills Fleming, Walker, Hulbert, Gray & Byrd, Michael G. Gray, Shaw, Maddox, Graham, Monk & Boling, Chesley W. Monk, Duncan & Mangiafico, George E. Duncan, Jr., Bovis, Kyle & Burch, James E. Singer, Chambless, Higdon & Carson, David N.*

*Nelson, Reynolds & McArthur, Charles M. Cork III, Mills, Moraitakis, Kushel & Pearson, Albert M. Pearson,* amici curiae.