A00A1731. KARPOWICZ et al. v. HYLES.
(543 SE2d 51)

SMITH, Presiding Judge.

Riann Karpowicz and her mother, Ruth Karpowicz, filed this tort action against Stephen Hyles, an attorney who had acted as defense counsel for another individual in a criminal case. Hyles obtained and reviewed the psychiatric records of Riann Karpowicz and then, during the criminal trial, used certain facts obtained from the records to attack the credibility of Ruth Karpowicz. Later, in this action, the trial court granted summary judgment to Hyles on all counts of the Karpowiczes' complaint and denied partial summary judgment to the Karpowiczes. The Karpowiczes appeal. We agree with the trial court that summary judgment was warranted in Hyles's favor. We therefore affirm.

Steven Carson was tried before a jury on charges of false imprisonment and rape of Riann Karpowicz. In preparation for trial, Carson's attorney, Hyles, had a subpoena duces tecum served on the records custodian at Northridge Hospital, a psychiatric treatment facility at which Riann Karpowicz had received treatment in 1994. In

response to the subpoena, the custodian contacted Hyles's office and informed him that he could retrieve the documents. After one of Hyles's office employees paid for and picked up the records, Hyles reviewed the custodial certificates, and he testified by affidavit that he "briefly reviewed the documents to determine what they contained and which portions, if any, would be relevant evidence in the Carson trial." He also testified Carson never reviewed the records, although he did discuss with Carson the fact that Karpowicz had been treated at Northridge and the dates this treatment had occurred.

Before trial began, the trial court ruled that nothing in the records could be used at trial to "prove the truth of any diagnosis or statement of the condition of Riann Star Karpowicz contained in the records, and that no privileged information contained in the records could be referred to in opening statements, jury arguments, and in the examination of witnesses." The trial court did, however, allow the facts and dates of treatment to be used as evidence.

During his opening statement, Hyles mentioned that Karpowicz and Carson "began a friendship shortly after she was released from the Northridge Hospital." Later, on cross-examination, Ruth Karpowicz testified she would believe Riann Karpowicz under oath. Hyles then showed Ms. Karpowicz a document signed by her admitting Riann to Northridge, and upon questioning by Hyles, Ms. Karpowicz acknowledged she had Riann admitted to that facility due to Riann's "excessive lies." While the prosecutor objected to admissibility of this document on grounds of relevancy, he did not object on privilege grounds. The document was admitted, with redaction to keep out certain handwritten notes and other information. Also on cross-examination, Ruth Karpowicz acknowledged that she told a licensed clinical psychologist who treated Riann at Northridge that she was afraid that Riann was unable to perceive reality accurately. Carson was acquitted after less than an hour of jury deliberations.

Riann and Ruth Karpowicz then filed this action against Hyles, seeking an order for return of Riann's records and damages for negligence, abuse of judicial process through abuse and unlawful use of a subpoena, fraud and deceit, invasion of privacy, tortious interference with a confidential relationship, and negligent and intentional infliction of emotional distress. Following motions filed by the parties, the trial court granted summary judgment to Hyles and denied the Karpowiczes' motion for partial summary judgment. This appeal by the Karpowiczes followed.

1. The Karpowiczes first argue that the trial court erroneously ruled "that a criminal defendant's right to confront a witness overrides the privilege of confidential communications of [that witness's] psychiatric records." But the trial court's ruling was not so broad. The

trial court stated:

> The criminal defense attorney's obligation in a criminal trial is to his client as opposed to third persons, including the complaining witness, and this duty includes the protection of the client's constitutional right to confront complaining witnesses. Ga. Const. Art. 1, § 1 ¶14. Where credibility of a witness in a criminal trial is in issue, the criminal defendant must be given broad latitude to explore, and impeach, that witness'[s] credibility.

This was not a generalized ruling that a criminal defendant's right to confront an opposing witness *always* overrides the use of privileged psychiatric records. Indeed, the psychiatric privilege can yield to the right of confrontation upon a showing that privileged material is necessary to an accused's defense. See *Bobo v. State*, 256 Ga. 357, 359 (3) (349 SE2d 690) (1986).

Here, the trial court conducted a pre-trial hearing and ruled that Hyles could not introduce any privileged matters. Hyles complied with this ruling. Although Hyles mentioned that Riann Karpowicz had received treatment at Northridge, the fact of this treatment correctly had been ruled admissible at trial. See, e.g., *Johnson v. State*, 254 Ga. 591, 597 (7) (331 SE2d 578) (1985). Furthermore, Hyles's cross-examination of Ruth Karpowicz was not an improper use of privileged records. Ruth Karpowicz herself was not a patient when she made the statement on Riann's admission slip concerning Riann's "excessive lying" or when she indicated that Riann had difficulty perceiving reality accurately. No confidential relationship existed permitting Ruth Karpowicz to claim the psychiatrist-patient communications privilege. See generally *Fulbright v. State*, 194 Ga. App. 827 (1) (392 SE2d 298) (1990) (to invoke privilege, psychiatrist-patient relationship must exist to the " 'extent that treatment was given or contemplated.' [Cits.]"). This case is distinguished from *Mrozinski v. Pogue*, 205 Ga. App. 731 (423 SE2d 405) (1992), in which this court concluded that an issue of fact existed as to whether the plaintiff, the father of a 14-year-old who received psychiatric treatment from defendant, also received psychiatric assistance from the defendant. Id. at 733. In *Mrozinski*, evidence was presented that the plaintiff "participated in therapy," id., and that he "consulted [the defendant] for treatment and assistance for himself in his family relations, particularly with his daughter." Id. at 732. But the record here does not show that Ruth Karpowicz sought treatment from the treating psychologist at Northridge to whom she made the statement concerning Riann's inability to perceive reality accurately.

2. We next address the Karpowiczes' argument that the trial court erred in granting summary judgment to Hyles on Riann Karpowicz's invasion of privacy claim. The right of privacy has indeed been recognized in this State "as a fundamental constitutional right, having a value so essential to individual liberty in our society that its infringement merits careful scrutiny by the courts." (Citation and punctuation omitted.) *Powell v. State*, 270 Ga. 327, 329 (3) (510 SE2d 18) (1998). The privacy afforded to medical records was recently extensively discussed in *King v. State*, 272 Ga. 788 (535 SE2d 492) (2000). In *King*, the Supreme Court of Georgia concluded that the defendant had a reasonable expectation of privacy in her medical records and that those records could not be disclosed without her consent unless their production was otherwise required by the laws of this State. The Court found that in the absence of waiver and without notice to the accused, the State could not obtain a defendant's medical records by use of a subpoena under OCGA § 24-9-40. This right of privacy certainly extends to privileged psychiatric records. As stated in *Bobo*, supra, a criminal defendant is not entitled to embark upon "a 'fishing expedition' regarding a witness'[s] consultations with a psychiatrist." *Bobo*, supra, 256 Ga. at 360.

But after giving Riann Karpowicz's invasion of privacy claim appropriate "careful scrutiny," we cannot conclude that Hyles's actions were improper or that he in any manner engaged in a "fishing expedition" prohibited by cases such as *Bobo*. Nor does *King*, supra, require reversal. We first note that the Supreme Court's discussion in *King* addresses whether the *State* was authorized under OCGA § 24-9-40 to obtain a patient's medical records and then use those records to prosecute that patient. But that Code section expressly does not apply to psychiatrists or hospitals in which the patient is receiving treatment or has been "treated solely for mental illness." OCGA § 24-9-40 (a). Furthermore, the State's conduct is not at issue here. Instead, the narrower issue is whether a criminal defense attorney wrongfully presumed that a psychiatric hospital complied with the law in providing a patient's psychiatric records. We agree with the trial court that Hyles was entitled to rely on just such a presumption that the records he received from Northridge were either nonprivileged or that Northridge first obtained a waiver from Riann Karpowicz.

Under OCGA § 37-3-166 (a) (8), a hospital is authorized to release a copy of a psychiatric patient's record, except for privileged matters, pursuant to a valid subpoena or court order. The act of having the subpoena issued was not improper, as Hyles was authorized to obtain nonprivileged records from the facility. Northridge in no manner indicated that certain information in the records might not be discoverable by, for example, moving to quash the subpoena as

being unduly burdensome or seeking privileged matter, as did the hospital in *Plante v. State*, 203 Ga. App. 33 (416 SE2d 316) (1992). See OCGA § 24-10-22 (b) (1).[1] Also, rather than appear in court with the requested records as directed by the subpoena, the custodian contacted Hyles and instructed him to retrieve the records, a fact that would have further suggested that the records contained no privileged information or that a waiver had been obtained.

The concept of invasion of privacy encompasses acts amounting to intrusion upon a plaintiff's seclusion or solitude or into the plaintiff's private affairs and "public disclosure of embarrassing private facts about the plaintiff." *Sun v. Langston*, 170 Ga. App. 60, 61 (2) (316 SE2d 172) (1984).[2] Because we conclude that Hyles was authorized to presume that information contained within the records provided by Northridge was not privileged or that Northridge had obtained a valid waiver from Riann Karpowicz, it follows that Hyles did not wrongfully intrude on Riann Karpowicz's private affairs. The Karpowiczes rely heavily upon *Susan S. v. Israels*, 55 Cal. App.4th 1290 (67 Cal. Rptr. 42) (2nd Dist. 1997). That decision is, of course, not binding on this court. It is also distinguishable. Unlike the *Israels* defendant, who read the accusing witness's psychiatric records and then sent the records on to another witness for review, Hyles simply reviewed the documents provided to him by Northridge and discussed nonprivileged matters with his client. Then, following a pre-trial hearing and the trial court's ruling on the admissibility of the records obtained from Northridge, Hyles introduced nonprivileged matter into evidence.[3] We cannot conclude that this should be considered a public disclosure of private embarrassing facts. The trial court did not err in granting summary judgment to Hyles on the invasion of privacy claim.

3. For the reasons discussed in Division 2, the trial court did not err in granting summary judgment to Hyles on any claim for intentional infliction of emotional distress. Hyles's representation of his client simply did not rise to the level of extreme, outrageous, or egre-

---

[1] Requiring the hospital to move to quash the subpoena does not, contrary to the Karpowiczes' contention, place the burden on "the recipient of the psychiatrist-patient privilege to attempt to quash any subpoena issued for mental health records in order to prevent the receipt of [those records by] a criminal defendant." Instead, this ruling simply recognizes the responsibility of psychiatric facilities to comply with the strict requirements related to the release of psychiatric records.

[2] Two other "loosely related" torts are encompassed within the concept of invasion of privacy: publicity placing the plaintiff in a false light in the public eye and appropriation of a plaintiff's name and likeness for the defendant's advantage. *Sun*, supra, 170 Ga. App. at 61 (2). The Karpowiczes do not appear to contend that these torts are applicable here.

[3] We note that the trial judge who presided over the criminal trial and the hearing testified by affidavit that "[t]he contents of the records were not in any sense broadcast, bandied about, or discussed in the course of the proceedings except as reflected in the transcript."

gious conduct[4] directed toward Riann Karpowicz that would support such a claim. The trial court did not err in granting Hyles's motion for summary judgment on this claim.

4. We find no merit in the Karpowiczes' argument that the trial court erroneously granted summary judgment to Hyles on Riann Karpowicz's negligence claim. The trial court correctly concluded that Hyles "owed no duty to [Riann Karpowicz] which was or could have been breached." Hyles's paramount duty was to the trial court, as a licensed attorney and officer of the court, and to his client, whose liberty was at stake.

5. Summary judgment in Hyles's favor also was warranted on any claim for tortious interference with a confidential relationship. No such claim has been recognized in Georgia under the circumstances presented here. *Rome Indus. v. Jonsson*, 202 Ga. App. 682 (415 SE2d 651) (1992), cited by the Karpowiczes, is not controlling on this issue. That case equates a claim for tortious interference with the fiduciary relationship between a corporation and one of its officers with a claim "for tortious interference with contractual rights." Id. at 684. An allegation was made in that case that a party induced the corporate officer to breach his fiduciary duty. Id. at 683. Even assuming that *Jonsson* might support a claim for interference with a confidential relationship, the record in this case is devoid of evidence that Hyles attempted to induce anyone to breach a confidential relationship or a fiduciary duty.

6. The Karpowiczes' fraud and deceit claim fails because nothing in the record suggests that Hyles acted with an intention to deceive or that he made a misrepresentation or concealed any fact with the intention and purpose of deceiving and injuring Riann Karpowicz. See *Lively v. Garnick*, 160 Ga. App. 591, 592 (1) (287 SE2d 553) (1981).

7. The Karpowiczes' claim for malicious abuse of process also fails. First, criminal process cannot form the basis of a civil malicious abuse of process claim. *Gardner v. Rogers*, 224 Ga. App. 165, 169 (5) (480 SE2d 217) (1996). Second, they have failed to show both elements of such a claim. Nothing in the record shows that Hyles acted with "an ulterior purpose" or that he committed "an act in the use of the process not proper in the regular prosecution of the proceeding." (Citation and punctuation omitted.) *Rothstein v. L. F. Still & Co.*, 181 Ga. App. 113, 114 (2) (a) (351 SE2d 513) (1986). As argued by Hyles, he simply acted "in the course of his representation of a criminal defendant to procure potentially exculpatory evidence relevant to the credibility of the accusing witness."

---

[4] See, e.g., *Turnbull v. Northside Hosp.*, 220 Ga. App. 883, 884 (2) (470 SE2d 464) (1996).

*Judgment affirmed. Johnson, C. J., and Phipps, J., concur.*

DECIDED NOVEMBER 28, 2000 —
RECONSIDERATION DENIED DECEMBER 13, 2000 —

Negligence, etc. Muscogee Superior Court. Before Judge Brown from Macon Circuit.

*Beltran & Associates, Frank J. Beltran, Douglas V. Chandler, Bernadette C. Crucilla,* for appellants.

*Hawkins & Parnell, Howell Hollis III, Christine L. Mast, H. Lane Young II,* for appellee.

*Davis, Zipperman, Kirschenbaum & Lotito, Nicholas A. Lotito, James C. Bonner, Jr.,* amici curiae.