## S02A1329. KING v. THE STATE.
### (577 SE2d 764)

FLETCHER, Chief Justice.

Following a one-car accident, a police officer charged Michael David King with driving under the influence, and the State executed a search warrant for King's medical records at the hospital where he was treated for injuries. We granted King's interlocutory application to consider whether he was entitled to notice and an opportunity to be heard on the State's request for a search warrant to obtain his medical records. Because a search warrant requires a neutral judicial officer to find probable cause that a crime has been committed, we hold that a defendant's constitutional right to privacy is not violated when the State obtains private medical records through a search warrant without notice to the defendant or a hearing on the request. Therefore, we affirm the trial court's denial of King's motion to suppress.

Michael David King was driving on a Gwinnett County road on February 25, 2000, when his car apparently spun out of control, crossed the road, hit an embankment, flew into the air, and landed upside down. The investigating officer, Todd W. Ramsey, smelled alcohol on King's breath and from inside the car. The fire department extricated King from his car and took him to the Gwinnett Medical Center where hospital workers drew his blood for diagnosis and treatment. At the hospital, Ramsey noted that King's speech was slow and slurred. The police officer read the implied consent notice to King, and King agreed to submit to the state-administered chemical blood test. The test showed an alcohol result of 0.19 grams per 100 milliliters.

The Gwinnett County Solicitor-General's Office filed accusations charging King with driving under the influence and failure to maintain a single lane.[1] King filed a motion in limine to exclude the results of the state-administered blood test, which the trial court granted after the State failed to lay the proper foundation to admit

[1] See OCGA §§ 40-6-391 (a) (1) & (5); 40-6-48.

the results. Meanwhile, the State had obtained a search warrant from a magistrate for all medical records related to King's treatment at the Gwinnett Medical Center on February 25, 2000. King filed a motion to suppress these private medical records on the grounds that their disclosure violated his right to privacy under the due process clause of the Georgia Constitution as held in *King v. State*.[2] Denying the motion, the trial court ruled that the State did not have to provide notice to the defendant or hold a hearing because the earlier *King* case did not apply to search warrants.

1. In *King*, we addressed whether an individual's right to privacy was violated when the State obtained an accused's personal medical records through a subpoena under OCGA § 24-9-40. In that case, the jury convicted Rebecca King of driving under the influence based on the results of a blood-alcohol test that the hospital had given her for purposes of diagnosis and treatment of her injuries. We held that individuals have a state constitutional right to privacy in their personal medical records; this constitutional right includes procedural safeguards that limit the State's authority to obtain evidence against a criminal defendant by an ex parte subpoena; and OCGA § 24-9-40 (a) was unconstitutional as applied to Ms. King because she was not given notice and an opportunity to object to the prosecution's subpoena of her medical records.[3]

In holding that the statute failed to afford Ms. King adequate due process, this Court made clear that our decision was limited to the State's use of a subpoena to obtain medical records. Specifically, we distinguished between an investigative subpoena and a search warrant as an investigative tool for gathering evidence of a crime: "Unlike the Fourth Amendment which requires that the State have probable cause prior to the seizure of an accused or his property, OCGA § 24-9-40 (a) does not contain any express limits on the use of a subpoena to obtain a defendant's medical records for possible introduction as evidence in a criminal proceeding."[4]

2. Despite this distinction, Michael King seeks to extend our holding in *King* to records released through a search warrant. He argues that a citizen's constitutional right to privacy requires the State to give a defendant notice of a search warrant and an opportunity to object before the State receives private medical records.

When an individual challenges the State's action for violating the fundamental right to privacy, the State must show that its intrusion into the individual's private life serves a compelling state inter-

---

[2] 272 Ga. 788 (535 SE2d 492) (2000); see Constitution of the State of Georgia art. I, sec. I, para. I (1983).

[3] See 272 Ga. at 790, 793-794.

[4] See id. at 792.

est and is narrowly drawn to achieve that interest.[5] In *King*, we acknowledged that law enforcement and public safety are compelling state purposes.[6] The problem in that case was that the statutory authority for the subpoena had no defined limits and, therefore, was not narrowly drawn to effectuate the State's compelling interest in enforcing criminal laws. In contrast, the limitations on the State's ability to obtain medical records through a search warrant is narrowly tailored to satisfy the State's compelling interests.

Both the United States and Georgia Constitutions protect against "unreasonable searches and seizures."[7] Adopting language similar to the Fourth Amendment, the Georgia Bill of Rights provides that "no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the persons or things to be seized."[8] In deciding the question of probable cause, the magistrate must make a practical, common-sense decision whether, given all the circumstances, there is a reasonable probability that the fruits, instrumentalities, or evidence of a crime will be found in a particular place.[9]

Besides these constitutional provisions, the legislature has codified additional requirements for the issuance of search warrants.[10] A search warrant may be issued only to a law enforcement officer charged with the duty of enforcing criminal laws,[11] the officer must state sufficient facts in writing to show probable cause that a crime is being committed or has been committed,[12] a judicial officer must evaluate and independently decide whether the officer has shown probable cause,[13] and the search warrant must be executed within ten days and a copy left with a person or at the premises where the items were seized.[14]

These provisions show that, unlike the subpoena process used in *King*, the process for obtaining a search warrant has procedural safeguards that limit the State's ability to obtain a defendant's private records. " '[W]hen the State's reason to believe incriminating evidence will be found becomes sufficiently great, the invasion of pri-

---

[5] See *Powell v. State*, 270 Ga. 327, 333 & n.5 (510 SE2d 18) (1998).

[6] See *King*, 272 Ga. at 791.

[7] U. S. Const. amend. IV; Ga. Const. art. I, sec. I, para. XIII.

[8] Ga. Const. art. I, sec. I, para. XIII.

[9] See *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984).

[10] See OCGA §§ 17-5-20 to 17-5-32 (governing searches with warrants).

[11] See OCGA § 17-5-20 (a).

[12] See OCGA § 17-5-21 (a); see also *Lewis v. State*, 255 Ga. 101, 104 (335 SE2d 560) (1985) (evidence may be presented by written affidavit or sworn testimony).

[13] See OCGA § 17-5-21 (a); see also *Campbell v. State*, 226 Ga. 883, 885-886 (178 SE2d 257) (1970) (magistrate must exercise "own independent discretion, and not just echo that of the deposing officer").

[14] See OCGA § 17-5-25.

vacy becomes justified and a warrant to search and seize will issue.' "[15] As the U. S. Supreme Court explained in upholding third-party search warrants, the "Fourth Amendment has itself struck the balance between privacy and public need, and there is no occasion or justification for a court to revise the Amendment and strike a new balance."[16]

Moreover, we are reluctant to construe the state constitutional right to privacy as imposing additional procedures when a search warrant seeks medical records due to our concern that these requirements would be extended to other matters related to search warrants. Requiring pre-seizure notice and a hearing would undermine the use of search warrants in criminal investigations;[17] it could also affect prosecutions involving other crimes and records held by third parties.[18] Because existing search warrant procedures provide adequate protections for an accused's privacy rights under the Georgia Constitution, we hold that the State does not violate a defendant's right to privacy and due process in obtaining a search warrant for personal medical records without notice or a hearing.[19]

In this case, the solicitor-general's office narrowly drafted the search warrant to seek only the medical records related to the hospital's treatment of King on the night of his accident, and the trial court found the search warrant affidavit was legally sufficient to establish probable cause. Since the magistrate had a substantial basis for concluding that probable cause existed, the State complied with all the established procedures in obtaining the search warrant, and King was not entitled to notice or a hearing on the State's request, the trial court correctly denied King's motion to suppress the results of the hospital's blood test.

*Judgment affirmed. All the Justices concur.*

---

[15] See *Zurcher v. The Stanford Daily*, 436 U. S. 547, 554 (98 SC 1970, 56 LE2d 525) (1978) (quoting *Fisher v. United States*, 425 U. S. 391, 400 (96 SC 1569, 48 LE2d 39) (1976)).

[16] See *Zurcher*, 436 U. S. at 559 (rejecting argument that Fourth Amendment prohibited the State from obtaining a search warrant unless the owner or person in possession of the property was reasonably suspected of criminal involvement).

[17] See id. at 560-561 (the opportunity to litigate "could easily result in the disappearance of the evidence, whatever the good faith of the third party").

[18] See, e.g., *In re Search Warrant*, 810 F.2d 67 (3d Cir. 1987) (affirming denial of motion to suppress medical records because government's interest in investigating physician for possible insurance fraud outweighed his patients' privacy interest in their medical records).

[19] See *State v. Nelson*, 941 P.2d 441, 449 (Mont. 1997) (no violation of state constitutional right to privacy when State shows probable cause that an offense had been committed and the defendant's medical records contained evidence of the offense). Cf. *Commonwealth v. Riedel*, 651 A.2d 135 (Pa. 1994) ("where an officer has probable cause to request a blood test pursuant to [the implied consent statute], the failure to verbalize the request shall not bar the officer from obtaining the results of a medical purposes blood test without a warrant").

DECIDED JANUARY 27, 2003.

*Sherry Boston*, for appellant.

*Gerald N. Blaney, Solicitor-General, Jeffrey P. Kwiatkowski, Emilien O. Loiselle, Jr., Jonathan D. Aurelia, Assistant Solicitors-General*, for appellee.