## A04A1603. KING v. THE STATE.
### (611 SE2d 692)

SMITH, Presiding Judge.

The facts of this case are more fully set out in *King v. State*, 276 Ga. 126 (577 SE2d 764) (2003), in which the Georgia Supreme Court affirmed the denial of Michael David King's motion to suppress. The Court concluded that King's right to privacy was not violated when the State obtained his private medical records by means of a search warrant. Id. at 126. On remand from the Supreme Court, following a bench trial, the trial court found King guilty of Count 1 of the accusation against him, which charged him with being in actual physical control of a moving vehicle while under the influence of alcohol to the extent that it was less safe for him to drive. OCGA § 40-6-391 (a) (1).[1] King appeals. Finding no error, we affirm.

1. King contends that the trial court erred in denying his motion to suppress his medical records obtained by means of the search warrant. He claims that the supporting affidavit consisted of nothing more than "a second-hand conclusion that probable cause existed" and "contained no facts whatsoever supporting a finding of probable cause." We find no merit in this contention. In *King*, supra, the Georgia Supreme Court found:

> *Since the magistrate had a substantial basis for concluding that probable cause existed, the State complied with all the established procedures in obtaining the search warrant,* and King was not entitled to notice or a hearing on the State's request, the trial court correctly denied King's motion to suppress the results of the hospital's blood test.

(Emphasis supplied.) *King*, supra, 276 Ga. at 129.

---

[1] We note that this case has also appeared previously in this court. In an unpublished opinion dated January 7, 2004, we concluded that the record was unclear as to the disposition of the charges brought against King, and we remanded the case for entry of "a proper and unambiguous final disposition." 265 Ga. App. XXVI. On remand from this court, the trial court "accepted" the guilty verdict as to Count 1 of the accusation but declared a mistrial on the remaining counts, after concluding that certain rulings made by the judge who previously presided over the case were ambiguous. The trial court stated that it could not "determine from the record the intent of the previous judge" and declared the mistrial "in the interest of judicial economy."

2. King contends that the trial court erred in admitting the results of his hospital blood and urine tests because the State failed to establish that the procedures used to test his blood and urine met the standard for admissibility set out in *Harper v. State*, 249 Ga. 519 (292 SE2d 389) (1982).

We need not reach this issue. At trial, a passenger in another vehicle on the night of the crash testified that just before coming upon the crash scene, she saw "a bright flash in the sky" and "a cloud of dust." When she arrived at the scene, she recognized the now over-turned red Honda Prelude as the vehicle that had just recently "zoomed past us." When investigating officer Todd Ramsey arrived at the scene a short time later, he stuck his head in the car and detected the odor of alcohol coming from both occupants. The stronger odor "was coming from the defendant, Mr. King." As a result of his investigation, Ramsey surmised that while negotiating a curve, the driver lost control of his vehicle, which then "crossed the opposite lane of travel, hit a sharp embankment . . . and then the car went airborne between a large tree and a telephone pole and landed upside down." Ramsey found no indication of the involvement of another vehicle or anything in the roadway that might have contributed to the driver's loss of control of his vehicle.

Later at the hospital, King told Ramsey that he was the driver of the vehicle. Ramsey noticed that King's "speech was slow and slurred, giving me more of an indication that he was under the influence." Ramsey testified that "even though I didn't get as close to him as I did when I stuck my head in the car . . . I could still smell the odor of an alcoholic beverage coming from his breath as he spoke and exhaled." Ramsey described the odor as "not as strong as it was at the scene due to the fact that a little bit of time had elapsed but it was still what I considered to be a fairly strong odor." Ramsey's DUI investigation and training included evaluating persons who had consumed alcohol and determining whether they were under the influence of alcohol. Ramsey testified that "[b]ased on the accident itself and speaking with Mr. King and the odor of the alcoholic beverage coming from his breath, I did feel that he was a less-safe driver when the accident had occurred."

Even without the result of the hospital's blood alcohol test, the evidence of King's guilt is overwhelming. The manner of the crash, King's admission that he was driving the car, and the responding officer's observations of King's demeanor and behavior were suffi-cient to find King guilty of driving under the influence of alcohol to the extent that it was less safe for him to drive. See *Trotter v. State*, 256 Ga. App. 330, 333 (2) (568 SE2d 571) (2002). The blood alcohol test

result was merely cumulative of other evidence of King's less-safe-to-drive condition, and error, if any, was harmless. We find no basis for reversal.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED MARCH 4, 2005.

*Marny J. Heit*, for appellant.
*Gerald N. Blaney, Jr.*, Solicitor-General, *Emilien O. Loiselle, Assistant Solicitor-General*, for appellee.