A09A1269. BROGDON v. THE STATE.
(683 SE2d 99)

MIKELL, Judge.

In a five-count accusation, Phillips Byrd Brogdon, Jr., was charged with DUI less safe (Count 1), DUI per se (Count 2), open container violation (Count 3), following too closely (Count 4), and disobeying a traffic control device (Count 5). After a bench trial, Brogdon was convicted on all counts and sentenced to 12 months on

---

548

Counts 1, 3, 4, and 5, to be served consecutively, with the first 30 days to be served in jail, the next 11 months in a work release program and the remainder on probation, a $2,000 fine, and 20 days of community service. On appeal, Brogdon raises six enumerations of error, four of which concern the validity of a search warrant for Brogdon's medical records and two of which challenge the sufficiency of the evidence as to Counts 3 and 5, respectively. For reasons explained below, we affirm.

> On appeal from a criminal conviction following a bench trial, [Brogdon] no longer enjoys a presumption of innocence, and we view the evidence in a light favorable to the trial court's finding of guilt, giving due regard to the trial court's opportunity to judge witness credibility. This Court does not weigh the evidence or determine the credibility of witnesses. Rather, we determine only if there is enough evidence from which a rational trier of fact could have found the accused guilty beyond a reasonable doubt.[1]

So viewing the evidence, the record shows that on December 16, 2007, Brogdon was involved in an accident, wherein he rear-ended a vehicle driven by Charles Hayes, who was stopped at a red traffic light behind two other vehicles. Hayes testified that he and his wife were waiting for the light to change when they were struck by Brogdon's truck, which forced their vehicle into the one in front of them. Hayes exited his vehicle and walked to Brogdon's vehicle. Brogdon was lying flat across the front seat with his head to the driver's side door, face down. Hayes testified that the paramedics arrived, removed Brogdon from his vehicle and placed him into the ambulance; that Brogdon appeared to be in a drunken stupor, had slurred speech, and was unable to stand without assistance; that a strong odor of alcohol emanated from Brogdon's breath; and that Brogdon was argumentative with the police officer who arrived on the scene.

Officer K. L. Robinson of the Gwinnett County Police Department testified that upon arriving at the scene, he determined which vehicle belonged to Brogdon and that he saw an open 12-ounce beer can on the driver's side floorboard. Robinson noticed a smell of alcohol on Brogdon while he was being treated in the ambulance and observed that Brogdon's eyes were slightly bloodshot and red and that his speech was slurred. Additionally, Brogdon was belligerent with the paramedics and with Robinson. Brogdon also testified that

---

[1] (Punctuation and footnotes omitted.) *Yglesia v. State*, 288 Ga. App. 217 (653 SE2d 823) (2007).

there was a cooler in the bed of Brogdon's truck that contained eight or nine additional beer cans, some of which were open, and that he concluded that Brogdon was under the influence of alcohol.

Robinson did not read the implied consent warning to Brogdon at the scene and was unable to see him later that evening at the hospital to do so. As a result of his investigation, Robinson determined that Brogdon was traveling at a high rate of speed at the point of impact as there were no skid marks at the scene that would have indicated that Brogdon attempted to stop before the impact. On cross-examination, however, Robinson acknowledged that in accidents involving vehicles with anti-lock braking systems, skid marks may be absent.

Nick Schmalenberger witnessed the accident. He testified that he was preparing to exit a nearby parking lot when he saw Brogdon's truck hit Hayes's vehicle. Schmalenberger further testified that Brodgon was driving 55 to 60 miles per hour and attempted to swerve out of the way when he was about a car's length away from the vehicle that he hit. Schmalenberger remained at the scene until the police arrived. Jeff Graves, a passenger in Schmalenberger's car, testified consistently with Schmalenberger as to how the accident occurred and stated that he saw beer cans in the bed of Brogdon's truck.

Investigator Charles Foster testified that as a part of his duties with the Gwinnett County Police Department, he obtains search warrants for the medical records of drivers involved in car accidents who are suspected of DUI. Foster identified the search warrant, which sought all medical records of Brogdon, "who appeared at Gwinnett Medical Center on or about December 16, 2007 [at] 8:34 p.m." Foster testified that the information he utilized in the affidavit for the search warrant was obtained from his review of Robinson's police report. He acknowledged on cross-examination that he did not talk to Robinson, Brogdon, or any of the witnesses.

The search warrant was executed. Brogdon's medical records included a diagnosis of blunt head trauma and acute alcohol intoxication and a blood alcohol content of 0.329. Brogdon moved to suppress his medical records on the ground that the search warrant was invalid, and his motion was denied. Brogdon had a bench trial immediately thereafter and was convicted on all counts.

1. On appeal, Brogdon attacks the validity of the search warrant, arguing in four separate enumerations of error that his medical records are considered "private papers" as described in OCGA § 17-5-21 (a) (5) and thus were not subject to seizure; that the affidavit used to obtain the warrant did not allege that evidence of a crime would be contained in the records; that the search warrant contained false and misleading information; and that the warrant impermissi-

bly authorized a general search. We find no error.

(a) Our Supreme Court addressed the issue of whether a search warrant can be utilized to obtain medical records for use in a criminal prosecution in *King v. State*.[2] In that case, the defendant was involved in a one-vehicle accident and agreed to a state-administered blood test, the results of which were excluded at trial.[3] In the meantime, however, the state obtained a search warrant for all the defendant's medical records related to his treatment for the accident, which records the defendant sought to suppress on the grounds that the disclosure violated his right to privacy.[4] The trial court denied the motion to suppress,[5] and the Supreme Court granted the defendant's interlocutory application "to consider whether he was entitled to notice and an opportunity to be heard on the State's request for a search warrant to obtain his medical records."[6] The Court held that

> [b]ecause existing search warrant procedures provide adequate protections for an accused's privacy rights under the Georgia Constitution, . . . the State does not violate a defendant's right to privacy and due process in obtaining a search warrant for personal medical records without notice or a hearing.[7]

Explaining its reasoning, the Court distinguished the use of a subpoena from that of a search warrant to obtain medical records, stating that

> [w]hen an individual challenges the State's action for violating the fundamental right to privacy, the State must show that its intrusion into the individual's private life serves a compelling state interest and is narrowly drawn to achieve that interest. . . . [L]aw enforcement and public safety are compelling state purposes. . . . [T]he statutory authority for the subpoena had no defined limits and, therefore, was not narrowly drawn to effectuate the State's compelling interest in enforcing criminal laws. In contrast, the limitations on the State's ability to obtain medical

---

[2] 276 Ga. 126 (577 SE2d 764) (2003).

[3] Id at 126-127.

[4] Id. at 127.

[5] Id.

[6] Id. at 126.

[7] (Footnote omitted.) Id. at 129 (2).

records through a search warrant is narrowly tailored to satisfy the State's compelling interests.[8]

We reject Brogdon's argument that *King*[9] does not apply and that his medical records could not be obtained via search warrant because they constituted "private papers," which are exempt from search warrants pursuant to OCGA § 17-5-21. In support of his argument, Brogdon relies on *Sears v. State*,[10] in which the Supreme Court affirmed the denial of the defendant's motion to suppress a personal notebook that was seized pursuant to a search warrant but stated that OCGA § 17-5-21's exemption of "private papers" from the items was meant to reach papers "covered by privilege (attorney-client, doctor-patient, etc.)."[11] However, *Sears* does not warrant a different result here. *King*[12] controls as it specifically held that medical records can be seized pursuant to a search warrant.[13] Thus, Brogdon's argument is unavailing.

(b) Brogdon contends that the affidavit used to obtain the warrant fails to allege a probability that evidence of a crime would be contained in the medical records. We disagree.

When determining whether probable cause exists to issue a search warrant, "a magistrate must evaluate all the circumstances set forth in the affidavit before him or her and make a practical, common-sense decision whether there is a fair probability that evidence of a crime will be found in a particular place."[14] On appeal, we give great deference to the magistrate's determination of probable cause, presume the validity of the affidavit supporting the search warrant, and resolve doubtful cases in favor of upholding the warrant.[15] We review the contents of the affidavit in the light most favorable to upholding the trial court's determination.[16]

In the instant case, the affidavit listed the crimes that were believed to have been committed, which included driving under the

---

[8] (Footnotes omitted.) Id. at 127-128 (2). See *King v. State*, 272 Ga. 788 (535 SE2d 492) (2000), which held that a subpoena could not be utilized to obtain medical records. Id. at 793 (1).

[9] Supra, 276 Ga. 126.

[10] 262 Ga. 805 (426 SE2d 553) (1993).

[11] (Citations omitted.) Id. at 807 (3).

[12] Supra, 276 Ga. 126.

[13] See also *Rylee v. State*, 288 Ga. App. 784, 785-786 (1) (655 SE2d 239) (2007) (defendant's exercise of constitutional right to refuse a state-administered test is independent of state's decision to obtain other evidence of a crime by utilizing a search warrant for the defendant's medical records).

[14] (Punctuation and footnotes omitted.) *Fletcher v. State*, 284 Ga. 653, 655 (3) (670 SE2d 411) (2008).

[15] *State v. Donaldson*, 281 Ga. App. 51, 52 (635 SE2d 345) (2006).

[16] *Powers v. State*, 261 Ga. App. 296, 302 (4) (582 SE2d 237) (2003).

influence, following too close, and open container, and it averred that Brogdon caused an accident and had open and empty beer cans inside his vehicle. Therefore, the affidavit included facts sufficient to support a finding that evidence of a crime would be contained in the medical records.[17] Additionally, it supported the magistrate's finding of probable cause. Therefore, we also reject Brogdon's argument that the warrant was invalid because the affidavit omitted relevant information and contained false and misleading information. Brogdon argues that the affidavit incorrectly referred to beer cans inside the vehicle, when there was only one open and empty beer can inside the truck, and incorrectly described the number of cars involved in the accident. These misstatements were not so material that they would have affected the finding of probable cause.

(c) Brogdon argues that the search warrant impermissibly authorized a general search of his records. As in *King*,[18] the search warrant was narrowly drafted to seek only the medical records from the hospital where Brogdon was treated on the day of the accident. Therefore, Brogdon's argument that the warrant authorized a general search is incorrect.[19]

2. In his fifth enumerated error, Brogdon maintains that the evidence was insufficient to support his open container conviction pursuant to OCGA § 40-6-253 because there was no evidence presented during the trial that there was an open container in the passenger compartment of Brogdon's truck.[20] Brogdon's argument is disingenuous. Brogdon requested a bench trial and stipulated to evidence presented at the motion hearing, which included Robinson's testimony that he saw an open beer can in the passenger compartment of Brogdon's truck.

Although not argued by Brogdon, we point out that the sentence imposed on the open container conviction must be vacated because the statute provides that the maximum fine for violating the statute

---

[17] See generally *Gilliam v. State*, 295 Ga. App. 358, 359 (671 SE2d 859) (2008) (where an individual has been involved in a traffic accident resulting in serious injuries or fatalities and the investigating law enforcement officer has probable cause to believe that the individual was driving under the influence of alcohol or other drugs, probable cause existed to justify the drawing of the individual's blood while he was unconscious).

[18] Supra, 276 Ga. at 129 (2).

[19] See generally *Smith v. State*, 274 Ga. App. 106, 110 (3) (616 SE2d 868) (2005) (search warrant's general description that it sought evidence of crimes listed therein was sufficient). But see *United States v. George*, 975 F2d 72, 75-77 (I) (A) (2d Cir. 1992) (authorization to search for evidence of any crime is overly broad and constitutes a general warrant, which is prohibited).

[20] See OCGA § 40-6-253 (b) (1) ("A person shall not: (A) [c]onsume any alcoholic beverage; or (B) [p]ossess any open alcoholic beverage container in the passenger area of any motor vehicle which is on the roadway or shoulder of any public highway.").

shall not exceed $200,[21] and Brogdon was sentenced to serve 12 months on this count.

3. In his final enumeration of error, Brogdon argues that the evidence did not support his conviction for disobeying a traffic control device under OCGA § 40-6-20.[22] OCGA § 40-6-21 (a) (3) defines the meaning of traffic signals and instructs that a driver facing a red light "shall stop at a clearly marked stop line or, if there is no stop line, before entering the crosswalk on the near side of the intersection or, if there is no crosswalk, before entering the intersection." Brogdon never reached the intersection because he rear-ended the last of three cars sitting at the intersection. For that reason, Brogdon did not contest his conviction for following too closely but maintains that he cannot be convicted of disobeying the red light.

In construing statutes,

> we look to the literal language of the statute, the rules of statutory construction and rules of reason and logic, the most important of which is to construe the statute so as to give effect to the legislature's intent. Where the literal language does not square with reason or intent, then the literal must yield.[23]

We agree with the state that a reasonable reading of the statute requires that a driver facing a red traffic light stop behind the stop line or crosswalk and also behind those vehicles stopped in observance of the traffic light. Therefore, this enumerated error fails.

*Judgment of conviction affirmed, sentence vacated in part and case remanded for resentencing. Johnson, P. J., and Ellington, J., concur.*

DECIDED AUGUST 5, 2009 

*Clark & Towne, David E. Clark, William D. Healan III*, for appellant.

---

[21] See OCGA § 40-6-253 (c). See also *Chastain v. State*, 231 Ga. App. 225, 228 (4) (498 SE2d 792) (1998) (trial court erred in sentencing defendant to 12 months probation for violating the open container law).

[22] See *Lyons v. State*, 208 Ga. App. 632, 633 (431 SE2d 432) (1993) (OCGA § 40-6-20 (a) requires drivers to obey the instructions of traffic-control devices).

[23] (Citation and punctuation omitted.) *State v. Nix*, 220 Ga. App. 651, 652 (1) (469 SE2d 497) (1996).

*Rosanna M. Szabo, Solicitor-General, Karen M. Seeley, Assistant Solicitor-General*, for appellee.