### A09A2225. STUBBLEFIELD v. THE STATE.
(690 SE2d 892)

ANDREWS, Presiding Judge.

Edward Jay Stubblefield was found guilty by a jury of violating OCGA § 40-6-391 (a) (1) by driving a moving vehicle while under the influence of alcohol to the extent that it was less safe for him to drive,

and of violating OCGA § 40-6-48 (1) by failing to safely drive his vehicle within a marked traffic lane.[1] We find no error and affirm.

1. A Coweta County Deputy Sheriff testified that he saw Stubblefield driving on Interstate 85 in a highly erratic manner drifting from one lane to another without signaling and while attempting to pass other drivers. As the deputy followed behind Stubblefield and tried to stop him with blue lights and siren activated, Stubblefield slowed almost to a stop (forcing the deputy to stop traffic behind him on the Interstate) and then sped away. The deputy followed Stubblefield for a few minutes while watching him erratically weave from one side of the Interstate to the other before he finally pulled over and came to a stop. The deputy who made the stop and another deputy who arrived shortly after the stop detected a strong odor of alcohol about Stubblefield's person and observed that he was unsteady on his feet. He had glassy eyes, slurred speech, and was unable to successfully complete a field sobriety test. After Stubblefield told the deputies that he was diabetic, an ambulance was summoned and a paramedic examined Stubblefield at the stop scene. The paramedic testified that Stubblefield had a slightly high glucose level, had an odor of alcohol about his person, was unsteady on his feet, and displayed other symptoms of being under the influence of alcohol, but that he did not require hospitalization. Stubblefield insisted that he was unable to complete field sobriety tests because of his diabetic condition; he refused to take a state-administered breath test to determine his alcohol concentration; and he told the deputy that he wanted a blood test. At that point, the deputy transported Stubblefield to a local hospital where he received treatment for his diabetic condition, but he refused to consent to a state-administered blood test to determine his alcohol concentration. As part of the examination and treatment that Stubblefield received for his diabetic condition, hospital emergency room personnel tested his blood and urine. Pursuant to a search warrant, the State obtained the results of those tests from the hospital, and the trial court admitted the test results into evidence over Stubblefield's objection. The physician who treated Stubblefield at the hospital emergency room testified pursuant to subpoena that the test results showed Stubblefield had an elevated glucose level, but not high enough to require admission to the hospital. The physician testified that the tests also showed that Stubblefield had an elevated blood

---

[1] Stubblefield's conviction for driving with an alcohol concentration in excess of 0.08 grams in violation of OCGA § 40-6-391 (a) (5) was vacated by operation of OCGA § 16-1-7 (a) when the trial court merged it at sentencing into his conviction for violation of OCGA § 40-6-391 (a) (1).

alcohol level and cocaine metabolites in his urine.[2] Stubblefield was diagnosed by the physician with "alcohol intoxication with hyperglycemia secondary to diabetes."

The deputies who observed Stubblefield driving and saw him at the scene of the stop, and the paramedic who examined him at the stop scene, testified that, based on their observations, Stubblefield was under the influence of alcohol to the extent that he was a less safe driver. The evidence was sufficient for the jury to find beyond a reasonable doubt that Stubblefield was guilty of driving under the influence of alcohol to the extent that he was a less safe driver, and of failing to safely maintain his vehicle within a marked traffic lane. OCGA §§ 40-6-391 (a) (1); 40-6-48 (1); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. There is no merit to Stubblefield's contention that the trial court erred by denying his motion to suppress the hospital-administered test results obtained by the State pursuant to a search warrant.

The State properly used a search warrant to obtain the medical records for use against Stubblefield in the criminal prosecution. *King v. State*, 276 Ga. 126 (577 SE2d 764) (2003). Contrary to Stubblefield's contention, the search warrant did not authorize an overly broad general search of his records. The warrant was sufficiently particularized because it was drafted to seek only the hospital's medical records related to Stubblefield's treatment immediately after the traffic stop. *Brogdon v. State*, 299 Ga. App. 547, 552 (683 SE2d 99) (2009); *King*, 276 Ga. at 129. The fact that a written return of the warrant was not made in a timely fashion, as provided in OCGA § 17-5-29, did not render the warrant invalid. Under OCGA § 17-5-29, "[a] written return of all instruments, articles, or things seized shall be made without unnecessary delay before the judicial officer named in the warrant or before any court of competent jurisdiction." At a subsequent hearing on the motion to suppress, Stubblefield contended that the return on the search warrant was not filed by the State until shortly after the initial hearing on the motion. Stubblefield does not contend that he did not receive a copy of the inventory of the medical records seized prior to trial, and he has made no showing of prejudice as a result of the delayed filing. Under these circumstances, the delay was a technical irregularity not affecting substantial rights, and the trial court properly refused to suppress the records. OCGA § 17-5-31; *Rivers v. State*, 250 Ga. 288, 294-295 (298 SE2d 10) (1982). Stubblefield's argument that the

---

[2] Stubblefield was charged with driving under the influence of cocaine in violation of OCGA § 40-6-391 (a) (6), but he was found not guilty on that charge.

trial court should have suppressed the records seized pursuant to the search warrant because they were "private papers" protected from seizure under OCGA § 17-5-21 (a) (5) was rejected by this Court in *Brogdon*, supra, at 549-551.

3. The physician who administered the blood test to Stubblefield in the hospital emergency room testified that the test result showed that he had an alcohol level of 287 milligrams per deciliter, and that this equaled 0.287 grams per deciliter. Stubblefield claims that the trial court erroneously overruled his objection that the physician had not been qualified as an expert capable of calculating that 0.287 grams equals 287 milligrams. Although the State did not formally tender the physician as an expert, the trial court tacitly or impliedly accepted her as an expert after her medical qualifications were presented and the State proceeded, without objection, to ask her for expert opinion evidence. *Fielding v. State*, 278 Ga. 309, 311 (602 SE2d 597) (2004). Having testified that the test result showed an alcohol level of 287 milligrams per deciliter, the physician did not have to demonstrate additional expert qualifications to make the simple mathematical calculation that 287 milligrams equals 0.287 grams. In accord with this testimony, we take judicial notice that a milligram is a unit of mass equal to one thousandth of a gram. American Heritage Dictionary, p. 1146 (3rd ed. 1992).

*Judgment affirmed. Miller, C. J., and Barnes, J., concur.*

DECIDED FEBRUARY 10, 2010 —
RECONSIDERATION DENIED FEBRUARY 25, 2010 — ▮▮▮▮▮▮▮

*Troy P. Hendrick*, for appellant.

*Robert Stokely*, Solicitor-General, *Sandra N. Wisenbaker, Amy B. Godfrey, Natalie Ashman, Stephen J. Tuggle*, Assistant Solicitors-General, for appellee.