## A11A1608. JONES v. THE STATE.
(722 SE2d 202)

DILLARD, Judge.

Following a jury trial, Blossom Lorayne Jones was convicted of two counts of first degree homicide by vehicle, one count of first degree feticide by vehicle, one count of driving under the influence of alcohol based on having a blood-alcohol content exceeding 0.08 grams per 100 milliliters (DUI per se), and one count of driving under the influence of alcohol to the extent that it was less safe for her to do so (DUI less safe). Jones appeals her convictions and the denial of her motion for new trial, (1) challenging the sufficiency of the evidence and (2) arguing that the trial court erred in denying her motion to suppress the result of her blood-alcohol content test, which was obtained via seizure of her blood samples pursuant to a search warrant. For the reasons set forth infra, we affirm.

Viewed in the light most favorable to the jury's guilty verdict,[1] the evidence shows that on December 15, 2006, Jones was visiting her friends, Tiffani Kimbrough and Bethany Stone, at Kimbrough's home in McDonough. While at Kimbrough's home, Jones drank at least two glasses of cognac, after which the three women decided to drive to Atlanta to visit another friend. With Kimbrough in the front passenger seat and Stone, who was pregnant, in the back seat, Jones first drove to a convenience store so that Kimbrough could buy some food and a bottle of beer. Some time around 10:00 p.m., the three set out on Interstate 75, heading north to Atlanta.

Shortly thereafter, two other motorists, who were also traveling north on I-75, observed Jones's vehicle veer sharply from the far left lane to the far right lane and hit a small pick-up truck, causing both vehicles to swerve off the highway and crash into a thicket of trees. One of the motorists who witnessed the accident called 911, and emergency medical services, as well as police, were quickly dispatched to the scene. Upon their arrival, the police officers and EMTs found Jones and Kimbrough alive but injured. However, Sonya Smeigh (who was the driver of the pick-up truck), Stone, and Stone's unborn child were tragically killed as a result of the accident.

As Jones was being attended to by the EMTs, one of the

---

[1] *See, e.g., Goolsby v. State*, 299 Ga. App. 330, 330-31 (682 SE2d 671) (2009); *see also Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

responding police officers noticed the smell of an alcoholic beverage on her breath and that her eyes were glassy and bloodshot, and thus, he attempted to ask her some questions about the accident. Although the officer was not able to obtain much information from Jones, he was able to perform the horizontal gaze nystagmus evaluation, which indicated that Jones had been drinking alcohol. Consequently, after Jones was transported to a hospital, the officer met with her again, read her the implied-consent notice,[2] and asked if she would consent to a blood-alcohol test. When Jones refused to submit to such a test, another police officer successfully sought a warrant to obtain blood samples drawn from Jones during the course of her treatment following the accident. Once obtained, Jones's blood samples were sent to the GBI for testing, which ultimately indicated a blood-alcohol content of 0.158.

Jones was thereafter indicted on two counts of first degree homicide by vehicle,[3] one count of first degree feticide by vehicle,[4] one count of DUI per se,[5] and one count of DUI less safe.[6] Prior to trial, she filed a motion to suppress the results of her blood-alcohol test, which the trial court denied after conducting a hearing on the matter.

During Jones's trial, the two motorists who witnessed the accident testified as to how it occurred, and one of the responding EMTs testified regarding his assistance of the victims at the scene. The responding police officers also testified regarding their investigation, and a forensic chemist with the GBI discussed her testing of Jones's blood-alcohol content.

Jones testified in her own defense but claimed that she could not recall how the accident occurred. In addition, an accident-reconstruction expert hired by Jones testified that the accident could not have occurred in the manner described by the witnesses and police officers. Instead, Jones's expert opined that based on where yaw marks from her vehicle were located on the interstate, another vehicle struck Jones's vehicle from behind, causing Jones's vehicle to veer out of control. Nevertheless, at the trial's conclusion, the jury found Jones guilty on all counts in the indictment.[7] Thereafter, Jones filed a motion for new trial, which the trial court denied after a hearing. This appeal follows.

---

[2] *See* OCGA § 40-5-67.1 (b) (2).

[3] *See* OCGA § 40-6-393 (a).

[4] *See* OCGA § 40-6-393.1 (b) (1).

[5] *See* OCGA § 40-6-391 (a) (5).

[6] *See* OCGA § 40-6-391 (a) (1).

[7] For purposes of sentencing, the DUI less safe conviction was merged into the DUI per se conviction.

1. Jones contends that the evidence was insufficient to support her first degree vehicular homicide and first degree vehicular feticide convictions. Specifically, she argues that the State failed to prove how the accident occurred beyond a reasonable doubt. We disagree.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[8] In evaluating the sufficiency of the evidence, "we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[9] Thus, the jury's verdict will be upheld "[a]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case. . . ."[10]

OCGA § 40-6-393 (a) provides: "[a]ny person who, without malice aforethought, causes the death of another person through the violation of subsection (a) of Code Section . . . 40-6-391 [driving under the influence of alcohol], . . . commits the offense of homicide by vehicle in the first degree. . . ." Similarly, OCGA § 40-6-393.1 (b) (1) provides:

> A person commits the offense of feticide by vehicle in the first degree if he or she causes the death of an unborn child by any injury to the mother of such child which would be homicide by vehicle in the first degree as provided in subsection (a) . . . of Code Section 40-6-393 if it resulted in the death of such mother.

Here, Jones was charged with causing the death of Smeigh, Stone, and Stone's unborn child through a violation of OCGA § 40-6-391, driving under the influence of alcohol. And the State presented evidence that Jones had a blood-alcohol content of 0.158—nearly double the legal limit—at or near the time she veered across three lanes of traffic and collided with Smeigh's pick-up truck, tragically resulting in the three deaths. Despite this evidence, Jones argues that the State failed to prove that her driving under the influence of alcohol caused the accident in light of her expert's testimony that another vehicle must have hit her vehicle and caused her to lose control. However, it was for the jury to determine the credibility of witnesses, as well as the weight to be accorded the

---

[8] *See, e.g., English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010).

[9] *Joiner v. State*, 299 Ga. App. 300, 300 (682 SE2d 381) (2009); *see also Jackson*, 443 U. S. at 319 (III) (B).

[10] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

expert testimony.[11] Accordingly, the evidence was sufficient for the jury to find Jones guilty beyond a reasonable doubt.[12]

2. Jones also contends that the trial court erred in denying her motion to suppress the results of her blood-alcohol test, arguing that the warrant used to obtain her blood samples from the hospital where she was treated on the night of the accident was unlawfully broad. We disagree.

In considering this argument, we note that "[i]n reviewing a trial court's decision on a motion to suppress, we construe the evidence most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility of the witnesses are adopted unless they are clearly erroneous."[13] Additionally, because the trial court is the trier of fact, "its findings are analogous to a jury verdict and will not be disturbed if any evidence supports them."[14]

With specific regard to warrants, in accordance with the Fourth Amendment to the United States Constitution, a search warrant may issue only upon "facts sufficient to show probable cause that a crime is being committed or has been committed . . . ."[15] And in determining whether probable cause exists, the issuing judge is required

> simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that . . . evidence of a crime will be found in a particular place.[16]

Further, in reviewing the issuance of a search warrant, we are charged with ensuring—considering the totality of the circumstances and giving substantial deference to the issuing judge's decision—that the judge had a "substantial basis" for concluding that probable cause existed.[17] With these guiding principles in mind,

---

[11] See Hamilton v. State, 281 Ga. 501, 502 (1) (640 SE2d 28) (2007); Murphy v. State, 263 Ga. App. 62, 64 (2) (587 SE2d 223) (2003).

[12] See Brown v. State, 310 Ga. App. 285, 285-86 (1) (712 SE2d 521) (2011) (holding that evidence that defendant had a blood-alcohol concentration of 0.164 at the time of the motor vehicle accident that killed his passenger was sufficient to support defendant's first degree vehicular homicide conviction).

[13] Hammont v. State, 309 Ga. App. 395, 396 (710 SE2d 598) (2011) (punctuation omitted).

[14] Id. (punctuation omitted).

[15] OCGA § 17-5-21 (a).

[16] State v. Palmer, 285 Ga. 75, 77 (673 SE2d 237) (2009) (punctuation omitted).

[17] Whitten v. State, 174 Ga. App. 867, 868 (1) (331 SE2d 912) (1985).

we now turn to Jones's argument in support of her claim of error.

In the case sub judice, the warrant specifically stated that the items to be seized were on the property of the hospital where Jones was treated on the night of the accident and described the items as follows: "blood samples withdrawn from Blossom Lorayne Jones, all medical records pertaining to the treatment, and toxicology screens received during admission, which is evidence in the crime of Homicide by Vehicle . . . ." Jones argues that this warrant was unlawfully broad in that it allowed the State to seize any of her medical records regardless of whether such records related to the accident. This contention lacks merit.

In *King v. State*,[18] our Supreme Court held that a defendant's rights are not violated "when the State obtains private medical records through a search warrant without notice to the defendant or a hearing on the request."[19] As the Supreme Court reasoned, this is because "the limitations on the State's ability to obtain medical records through a search warrant is narrowly tailored to satisfy the State's compelling interests," and there is no need to "strike a new balance" between these interests and a defendant's privacy concerns.[20] And here, as in *King* and contrary to Jones's assertion, the warrant was narrowly drafted to seek only the blood samples and medical records from the hospital where Jones was treated on the night of the accident.[21]

Moreover, even if the warrant could be construed, as Jones argues, as authorizing a broader seizure of all of her medical records instead of only those relevant to her treatment related to the accident, Jones failed to show that any such broader seizure occurred and thus has failed to show any harm. Indeed, where a search as it was actually conducted is lawful, "it is not rendered invalid merely because the warrant pursuant to which it was made was overbroad[.]"[22] Accordingly, the trial court did not err in denying Jones's motion to suppress the results of her blood-alcohol-content test obtained via the seizure of her blood samples and pursuant to the search warrant.[23]

---

[18] 276 Ga. 126 (577 SE2d 764) (2003).

[19] *Id.* at 126.

[20] *Id.* at 128-29 (2).

[21] *Id.* at 129 (2) (holding that the warrant was proper given that "the solicitor-general's office narrowly drafted the search warrant to seek only the medical records related to the hospital's treatment of [defendant] on the night of his accident. . . .").

[22] *Butler v. State*, 130 Ga. App. 469, 474 (2) (203 SE2d 558) (1973).

[23] *See Bowling v. State*, 289 Ga. 881, 887 (2) (c) (717 SE2d 190) (2011) (holding that warrant was not overbroad given that it was narrowly drafted to seek only the medical records related to the treatment of appellant on the night of the crimes); *Stubblefield v. State*, 302 Ga. App. 499, 501 (2) (690 SE2d 892) (2010) (holding that trial court properly denied defendant's

*Judgment affirmed. Mikell, P. J., and Boggs, J., concur.*

DECIDED JANUARY 18, 2012.

*Amanda R. Flora*, for appellant.
*Tommy K. Floyd, District Attorney, Thomas L. Williams, Assistant District Attorney*, for appellee.

---

motion to suppress when warrant was sufficiently particularized because it was drafted to seek only the hospital's medical records related to defendant's treatment immediately after the traffic stop); *Brogdon v. State*, 299 Ga. App. 547, 552 (1) (c) (683 SE2d 99) (2009) (holding that the warrant was proper when it was narrowly drafted to seek only the medical records from the hospital where defendant was treated on the day of the accident).