**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: December 19, 2023

S23A1158. GATES v. THE STATE.

MCMILLIAN, Justice.

After Joseph Robert Gates was involved in a serious automobile accident with another driver and entered a hospital for treatment, law enforcement used an ex parte court order to access his medical records and relied on them to arrest him. Gates was indicted on several charges, including driving under the influence per se. He then filed a motion to suppress his medical records, which the trial court denied. Gates now appeals from that denial, arguing that by obtaining his medical records via an ex parte court order, instead of a warrant, the State violated his rights to privacy and due process under the Georgia Constitution. Relying on our precedent, we conclude that the State violated Gates's right to privacy by obtaining his medical records via an ex parte court order, and, accordingly, we reverse the trial court's denial of his motion to

suppress.[1]

1. When reviewing a trial court's ruling on a motion to suppress, we review its legal conclusions de novo and independently apply the law to the undisputed facts.[2] See *Love v. State*, 309 Ga. 833, 836 (2) (848 SE2d 882) (2020) ("in reviewing a ruling on a motion to suppress, we review the trial court's . . . legal conclusions de novo" (citation and punctuation omitted)); *Mizell v. State*, 304 Ga. 723, 727 (2) (822 SE2d 211) (2018) ("In reviewing the trial court's grant or denial of a motion to suppress, we apply the well-established principle[] that . . . the trial court's application of the law to undisputed facts is subject to de novo review" (citation omitted)).

---

[1] This case was orally argued at Pierce County High School in Blackshear, Georgia, on October 26, 2023.

[2] Here, the trial court made very few, if any, factual findings, in denying the suppression motion, and no trial has been conducted. Thus, we recite the undisputed facts from the record, including pretrial testimony presented at the hearing on the motion to suppress. See *Jones v. State*, 314 Ga. 605, 609 (2) (878 SE2d 505) (2022) (explaining that the Court can consider "pretrial testimony adduced at the suppression hearing" when a trial court has not made express findings of fact after a hearing on the motion to suppress); *Hughes v. State*, 296 Ga. 744, 746 (1) n.4 (770 SE2d 636) (2015) (When we review a ruling on a motion to suppress, "some or all of the material facts may be undisputed . . . In such cases, an appellate court properly may take notice of the undisputed facts—even if the trial court did not—without interfering with the prerogative of the trial court to resolve disputes of material fact.").

The undisputed facts are as follows. On August 10, 2022, Corporal Jason Fondren of the Effingham County Sheriff's Office responded to a collision between Gates and another driver on State Route 275 at Industrial Boulevard in Effingham County. That collision rendered Gates unconscious and caused serious bodily injury to the other driver. Gates was transported to the Memorial University Medical Center ("Hospital") in Savannah, Chatham County, for treatment. An EMS officer alleged that while he was helping transport Gates to the Hospital, he could smell the odor of alcohol coming from Gates's person. The day after the collision, Fondren prepared a search warrant application addressed to the Chatham County Recorder's Court asking for Gates's blood vial held at the Hospital. However, the warrant was never issued.[3]

Instead, on September 26, 2022, about six weeks after the collision, Fondren obtained an ex parte court order from the

_____

[3] It is unclear from the record why that warrant was never issued, but it appears that the judge from whom Fondren initially sought the warrant was ill and unavailable.

Superior Court of Effingham County pursuant to OCGA § 24-12-1,[4] directing the Hospital to furnish "medical records, including but not limited to emergency room reports, X-rays, CT Scans, MRI's and Lab reports . . . for Joseph Albert Gates . . . from August 10, 2022 through the date of discharge." The order further directed the Hospital "not to disclose to anyone of the fact that this information [had] been requested or that any Order [had] been issued by the Court." The Hospital turned over Gates's medical records, including results of the blood testing that it had performed on Gates while treating him.

Based on these records, Fondren averred under oath that at the time of the collision, Gates had been driving with a blood alcohol content (BAC) of 0.201 grams, which was above the per se 0.08-gram limit established by Georgia law. See OCGA § 40-6-391 (a) (5). Relying in part on the BAC test results, Fondren obtained warrants for Gates's arrest. On January 24, 2023, Gates was indicted on several felony and misdemeanor counts, including four counts of

---

[4] OCGA § 24-12-1 provides in pertinent part: "[N]o hospital or health care facility . . . shall be required to release any medical information concerning a patient except . . . on appropriate court order or subpoena."

4

Serious Injury by Vehicle (OCGA § 40-6-394 (b)), and one count of Driving Under the Influence (Per Se) (OCGA § 40-6-391 (a) (5)).[5]

Gates then filed a motion to suppress his medical records, including his BAC test results. Following a hearing on that motion,[6] the trial court denied it, ruling that the use of an ex parte court order to obtain Gates's medical records did not violate his constitutional rights. The trial court determined that although this Court had prohibited the use of an ex parte subpoena to obtain medical records in *King v. State*, 272 Ga. 788 (535 SE2d 492) (2000) (*King I*), that prohibition did not extend to an ex parte court order. Instead, the trial court reasoned, an ex parte court order was like an ex parte search warrant, which this Court had previously held in *King v. State*, 276 Ga. 126, 129 (2) (577 SE2d 764) (2003) (*King II*) (a case unrelated to *King I*) could be used to obtain medical records even

---

[5] Gates was also indicted for Driving on Wrong Side of Roadway (OCGA § 40-6-40), and Failure to Maintain Lane (OCGA § 40-6-48).

[6] At the hearing, the State did not present any evidence to support that the State had probable cause to search Gates's medical records, nor did the trial court make any such finding.

without notice or a hearing.[7]

2. On appeal, Gates contends that his medical records are protected by the Georgia Constitution's right to privacy and that the State's use of an ex parte court order to obtain Gates's medical records is akin to use of the ex parte subpoena that we held violated the right to privacy in *King I*.[8]

(a) In *King I,* we held that "the personal medical records of this state's citizens clearly are protected by [the right of privacy] as guaranteed by our [state] constitution." 272 Ga. at 790 (1). See also *King II*, 276 Ga. at 127 (1) (stating that *King I* had "held that individuals have a state constitutional right to privacy in their personal medical records"). This right to privacy is "premised upon the due process clause of our [state] constitution," that is, Article I,

---

[7] After the court issued its order denying the motion to suppress on May 23, 2023, Gates filed a motion on May 25 to certify that order for immediate review pursuant to OCGA § 5-6-34 (b), which the court granted on May 30. Gates then filed an application for interlocutory appeal, which we granted on June 29, 2023.

[8] To the extent that Gates also argued that the use of the ex parte court order violated his due process rights under the Georgia Constitution apart from his right to privacy, we need not address that argument given our conclusion that obtaining the medical records by ex parte court order violated Gates's right to privacy.

Section I, Paragraph I of the Georgia Constitution (hereinafter "Paragraph I"). *King I*, 272 Ga. at 793 (1). See also *King II*, 276 Ga. at 127-29 (1)-(2) (same); *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, 197 (50 SE 68) (1905) ("The right of privacy . . . is . . . guaranteed . . . by the constitutions of the United States and of the State of Georgia, in those provisions which declare that no person shall be deprived of liberty except by due process of law."). Thus, pursuant to *King I*, Gates had a right to privacy in his medical records under Paragraph I of the Georgia Constitution.[9]

Yet the State, despite conceding that it "cannot obtain all of a person's medical records," still argues that Gates lacked a right of privacy in his BAC test results because they resulted from blood

---

[9] The State requested at oral argument that this Court overturn *King I*, but never made this request—let alone give a compelling argument supporting it—in any of the State's briefing. We decline to consider a request to overrule precedent made for the first time in oral argument with no briefing in support. See *Session v. State*, 316 Ga. 179, 185 (2) (887 SE2d 317) (2023) ("To consider [a] completely different issue, raised at oral argument for the first time, would render our rules a dead letter, and we will not allow that."). Cf. *Saint v. Williams*, 287 Ga. 746, 747 (2) (699 SE2d 312) (2010) (declining to address an appellant's assignment of error "because [that assignment] was not raised and argued in appellants' original brief" and "[i]t [was] improper to use a supplemental brief to expand upon the issues to be decided by this Court.").

tests performed by a hospital in the course of Gates's medical treatment following his collision, rather than tests instigated by the State.[10] This argument, however, runs against *King I*, where the medical records that we held were "protected by the constitutional right of privacy," included the results of BAC tests that a hospital had administered upon an accused "in accordance with [its] trauma protocol" for the "purpose of medical diagnosis and treatment" following a single-car collision. 272 Ga. at 788-90 (1). As we explained, "[e]ven if the medical provider is the technical 'owner' of the actual records, the patient nevertheless has a reasonable expectation of privacy in the information contained therein, since that data reflects the physical state of his or her body." *King I*, 272 Ga. at 790 (1). See also *King II*, 276 Ga. at 126-27 (1) (medical

---

[10] In its appellate briefing, the State conflates Paragraph I's right to privacy with Georgia's constitutional right against unreasonable searches and seizures (Ga. Const. Art. I, Sec. I, Par. XIII (hereinafter "Paragraph XIII")), and argues that Gates had no right to privacy in his medical records under Paragraph XIII because Gates has no reasonable expectation of privacy in records generated by a third party, see *Bowling v. State*, 289 Ga. 881, 883 (717 SE2d 190) (2011). Because we conclude that pursuant to *King I* Gates had a right to privacy in his medical records under Paragraph I, we decline to consider the State's arguments under Paragraph XIII.

records covered by the right to privacy included records related to a hospital's drawing of the defendant's blood "for diagnosis and treatment" after a car accident). Thus, pursuant to *King I*, Gates had a constitutional right to privacy in his medical records, including the BAC test results.

(b) Having determined that Gates's medical records are protected by Paragraph I's right to privacy, we now turn to the question of whether the ex parte court order used to obtain the medical records was more like the unconstitutional ex parte subpoena in *King I* or the permissible ex parte search warrant in *King II*.

In *King I*, the State attempted to rely on OCGA § 24-9-40 (a) to justify accessing an accused's medical records via an ex parte subpoena. That statute—like its successor statute OCGA § 24-12-1, which the State tries to rely on here—provided that "no hospital or health care facility . . . shall be required to release any medical information concerning a patient except . . . on appropriate court order or subpoena." In considering that statute, the *King I* Court

focused on the term "appropriate," which was not defined in the statute, and concluded that "the issuance of a subpoena for [the defendant's] medical records could not be 'appropriate' as otherwise required by OCGA § 24-9-40 (a), because such a subpoena would result in a violation of her constitutional right to privacy arising from the due process clause of this state's constitution." Id. at 793 (1). This was because OCGA § 24-9-40 (a) "[did] not contain any express limits on the use of a subpoena to obtain a defendant's medical records for possible introduction as evidence in a criminal proceeding." Id. at 792 (1). The statute neither required the State to first show "probable cause prior to the seizure of an accused['s] . . . property," nor required the accused be given "an opportunity to contest the validity of the subpoena before the disclosure of her medical records to the prosecution." Id. To construe "appropriate" under OCGA § 24-9-40 (a) to include an ex parte subpoena, *King I* reasoned, would allow the State to access confidential information "by means of a subpoena issued upon the mere filing of an indictment or accusation, if not before[]" and "to circumvent []

10

procedural safeguards" it would have otherwise needed to meet. See id. Noting that "unlimited access [by the State] to medical records" for prosecutorial purposes "would have the highly oppressive effect of chilling the decision of any and all Georgians to seek medical treatment[,]" the *King I* Court declined to adopt such a construction.[11] Id. at 792-93 (1). However, the Court made clear that its holding applied only to the ex parte subpoena process used in that case and "should not be construed as applicable to the prosecution's use of any procedural device other than an ex parte subpoena to obtain an accused's medical records." Id. at 794 (1).

In *King II*, we considered whether a search warrant to obtain medical records violated a defendant's right to privacy. Differentiating the search warrant from the subpoena in *King I*, we held that "[b]ecause a search warrant requires a neutral judicial officer to find probable cause that a crime has been committed, . . .

---

[11] Some of us question parts of *King I*'s analysis, which mixed language sounding in both substantive and procedural due process borrowed from federal law. But its holding was clear enough: obtaining King's medical records through an ex parte subpoena violated King's rights under the Due Process Clause of the Georgia Constitution. See 272 Ga. at 793 (1).

11

a defendant's constitutional right to privacy is not violated when the State obtains private medical records through a search warrant without notice to the defendant or a hearing on the request." *King II*, 276 Ga. at 126. See also id. at 129 (2) ("Since the magistrate had a substantial basis for concluding that probable cause existed . . . the trial court correctly denied [the defendant's] motion to suppress the results of the hospital's blood test.").

We apply *King I* and *King II*'s analysis here. Although *King I* limited its decision to an ex parte subpoena, its reasoning applies equally to this case, which involves an ex parte court order. Like its predecessor statute, OCGA § 24-12-1 authorizes hospitals to release medical information pursuant to an "appropriate" court order but does not define what an "appropriate" court order is. Also, OCGA § 24-12-1 lacks "any express limits" on the use of an ex parte court order to obtain an accused's medical records for prosecutorial purposes. See *King I*, 272 Ga. at 792 (1). And unlike the search warrant in *King II*, there is no evidence in the appellate record showing that the ex parte court order was based on probable cause

to justify the search, or that the order fully complied with the statutory requirements for the issuance of a search warrant. See OCGA §§ 17-5-20 to 17-5-32 (governing searches pursuant to warrants).

Accordingly, we conclude that the State's use of an ex parte court order to obtain Gates's medical records, including his BAC test results, is not materially different from the use of the ex parte subpoena that we struck down in *King I*, as opposed to the search warrant that we upheld in *King II*, and hold that the trial court erred in denying Gates's motion to suppress. See *King I*, 272 Ga. at 794 (2) (defendant's medical records were excluded from evidence after Court reversed the denial of her motion to quash the State's subpoena).

*Judgment reversed. All the Justices concur.*