**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, P. J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 14, 2025**

# In the Court of Appeals of Georgia

A24A1568. CANALES v. THE STATE.

RICKMAN, Judge.

Following a stipulated bench trial, Carlos Cantor Canales was found guilty of driving under the influence to the extent it was less safe to drive ("DUI less safe"), driving under the influence of alcohol with an unlawful blood alcohol level ("DUI per se,") and failure to maintain lane. The trial court merged all counts into his conviction for DUI per se for the purposes of sentencing. On appeal, Canales contends that the trial court erred by denying his pretrial motion to suppress. For the following reasons, we vacate the trial court's judgment and remand the case for proceedings consistent with this opinion.

On appeal from a criminal conviction that follows a bench trial, the defendant no longer enjoys a presumption of innocence, and we view the

evidence in a light favorable to the trial court's finding of guilt. We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

(Citation and punctuation omitted.) *Lute v. State*, 368 Ga. App. 70, 70-71 (889 S.E.2d 195) (2023).

So viewed, the evidence showed that on February 26, 2022, an officer with the DUI task force encountered Canales. The officer observed Canales fail to maintain his lane and noticed that the driver's side tires crossed the double yellow lines. After Canales made a left turn, the officer observed Canales fail to maintain his lane two additional times.

The officer initiated a traffic stop and made contact with Canales. Upon contact, the officer observed that Canales had bloodshot, red, glassy, watery eyes, conditions indicative of someone under the influence of alcohol. Additionally, the officer noticed a strong odor of alcohol emanating from inside the vehicle and Canales's person.

After initially speaking with Canales in English, the officer asked him if he would prefer to speak in Spanish and, thereafter, their communications continued in

Spanish. Canales admitted to the officer that he had just left a restaurant where he had been drinking alcohol. Canales agreed to submit to a portable breath test which resulted in a positive result for the presence of alcohol. The officer asked Canales to step out of the vehicle and, as he did so, again noticed a strong smell of alcohol coming from his person. Canales consented to standardized field sobriety tests.

During the first evaluation, horizontal gaze nystagmus, the officer observed six out of six clues. After failing the HGN, the officer asked Canales if he would like to continue the field sobriety tests, but he declined due to the cold weather. At this point, based on Canales's erratic driving, his admission to drinking alcohol, the odor of alcoholic beverages emanating from his breath, and the six out of six clues observed during the HGN, the officer arrested Canales for DUI.

The officer read Canales the implied consent notice in English. Canales indicated that he understood and consented to a blood test. After arriving at the police station, Canales and the officer were having a conversation while the officer completed paperwork when Canales indicated he was having a panic attack. Canales complained of chest pain and difficulty breathing and the officer called the fire department for help. At some point, Canales threw himself on the floor. When the

fireman arrived, he checked Canales's blood pressure and determined his vitals were okay before releasing Canales back to the officer. The officer testified that he did not recall relating back the blood test to the implied consent notice when the phlebotomist arrived to take Canales's blood. When asked if he indicated to Canales whether the blood draw was for investigative purposes or medical diagnostic purposes, the officer responded negatively. The blood test revealed that Canales had a blood alcohol level of 0.134.

Canales moved to suppress the admission of his blood test results. Canales argued that he should have been read the implied consent notice in Spanish, not English and that he did not voluntarily consent to a blood test. The trial court denied Canales's motion, finding that

> the Officer and [Canales] understood each other, as Spanish is the first language for them both, and that [Canales's] nervousness was not related to any communication issues. [Canales] had a clear understanding of the Implied Consent Warning and did not ask for clarification. Considering [Canales's] age, education, intelligence, and business ownership, the [c]ourt finds that [Canales] freely and voluntarily gave actual consent to the blood test.

4

Following a stipulated bench trial, the trial court found Canales guilty of DUI per se, DUI less safe, and failure to maintain lane.

Canales contends that the trial court erred by denying his pretrial motion to suppress.

"A suspect's right under the Fourth Amendment to be free of unreasonable searches and seizures applies to the compelled withdrawal of blood, and the extraction of blood is a search within the meaning of the Georgia Constitution." *Williams v. State*, 296 Ga. 817, 819 (771 SE2d 373) (2015). "[A] warrantless search is presumed to be invalid and the State has the burden of showing otherwise." Id. "The first well-recognized exception to the warrant requirement in the context of a state-administered blood test is the presence of exigent circumstances."Id. "Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." (Citation and punctuation omitted.) Id. at 821.

> When considering the totality of circumstances, we are mindful that
>
> '[i]mplied consent' is not an intuitive or plainly descriptive term with respect to how the implied consent law works. It may be a source of confusion. The term 'implied consent' may be used inappropriately to

refer to the consent a driver gives to a blood draw at the time a law enforcement officer requires that driver to decide whether to give consent. However, actual consent to a blood draw is not 'implied consent,' but rather a possible result of requiring the driver to choose whether to consent under the implied consent law.

(Citation and punctuation omitted.) *Williams*, 296 Ga. at 822–23.

Here, in considering Canales's motion to suppress, the trial court only addressed the consent Canales gave at the time he was read the implied consent notice. The trial court does not mention, address, or analyze the circumstances surrounding Canales's blood draw and whether he gave actual consent to the blood draw after suffering the panic attack and receiving medical care. Accordingly, we remand this case for the trial court to address whether Canales gave actual consent to the procuring and testing of his blood, which requires an determination of the voluntariness of the consent under the totality of the circumstances including the circumstances surrounding Canales's blood draw. See *Williams*, 296 Ga. at 823.

Because it may be relevant on remand, we will address the sufficiency of the evidence of Canales's DUI less safe conviction. Canales's conviction for DUI per se relied upon the introduction of the blood test results to prove the essential element of

the crime of DUI per se, that the "person's alcohol concentration is 0.08 grams or more at any time within three hours after . . . driving" a moving vehicle. See OCGA § 40-6-391 (a) (5)(defining DUI per se). The State, however, did not need Canales's blood test results to procure his conviction for DUI less safe. See OCGA § 40-6-391 (a) (1) (defining DUI less safe).

The evidence of Canales's DUI less safe conviction was sufficient without the introduction of his blood test. At trial, the proffered evidence showed that the officer observed Canales fail to maintain his lane three time and that his vehicle crossed over the double yellow lines. Upon contact with Canales, the officer noted that Canales had bloodshot, red, watery eyes, conditions of someone under the influence of alcohol. The officer also smelled a strong odor of alcohol emanating from the vehicle and Canales's person. Canales admitted to the officer that he had been drinking alcohol. When Canales exited the vehicle, the officer again noticed the smell of alcohol coming from his mouth. After exiting the vehicle, Canales failed the HGN test.

Accordingly, on remand should the trial court determine that the blood test was improperly admitted, it can reverse his conviction for DUI per se, sustain Canales's conviction for DUI less safe, and re-sentence him for DUI less safe. See *State v.*

*Robertson*, 369 Ga. App. 707, 713-714 (1) (894 SE2d 431) (2023) (admission of blood alcohol results harmless in DUI less safe trial when there was evidence of the defendant's alcohol consumption, including her own admission that she was drinking); *Stocia v. State*, 339 Ga. App. 486, 489 (3) (793 SE2d 651) (2016) (holding that admission of the blood test results was harmless as to the DUI less safe countwhere before the jurors heard evidence regarding blood test results, they heard about the defendant's erratic and concerning driving, the odor of alcohol emanating from his person, his slurred speech and blood shot eyes, and his admission to drinking); *King v. State*, 272 Ga. App. 8, 9 (2) (611 SE2d 692) (2005) ("The blood alcohol test result was merely cumulative of other evidence of King's less-safe-to-drive condition, and error, if any, was harmless.").

*Judgment vacated, and case remanded. Mercier, C. J., and McFadden, P. J., concur.*